**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

UNITED STATES OF AMERICA,

   v.

MOUZON BASS, III, *et al.*

         *Defendants*.

Case No. 4:24-cr-7

Hon. Amos L. Mazzant, III

**VIVATURE, INC.'S UNOPPOSED MOTION FOR LEAVE
TO INTERVENE TO DEFEND ITS CONSTITUTIONAL RIGHTS AND
ATTORNEY-CLIENT PRIVILEGE AND PARTIALLY OPPOSED MOTION TO
CONTINUE THE JULY 25, 2026 HEARING ON THE GOVERNMENT'S REQUEST
FOR HEARING CONCERNING THE RELEASE OF COMMUNICATIONS**

Vivature, Inc., by and through undersigned counsel, respectfully moves this Court for leave to intervene in this matter for the sole purpose of defending its assertion of privilege over certain privileged and confidential material seized by the Government and that the Government's Filter Team seeks to produce to third parties.

Vivature also respectfully requests that the Court continue the hearing set for July 25, 2024, regarding the Government's Request for Hearing Concerning the Release of Communications, Dkt. No. 87.[1] Neither the Government nor the Government's Filter Team provided notice of either their Request for Hearing or the Court's setting; instead, Vivature's undersigned counsel only learned of the July 25, 2024 hearing after business hours on July 24, 2024. Unfortunately, undersigned counsel has to attend a pre-scheduled medical appointment on July 25, 2024, and is unable to attend the hearing at its scheduled time. Undersigned counsel can be available on July 26, 2024, or as soon thereafter as the Court and other parties are available.[2]

---

[1] The Court has simultaneously set Dr. Scott's Motion for Status Conference, Dkt. No. 86, for the same time. Vivature is *not* seeking to continue the hearing on Dr. Scott's Motion to the extent issues related to Vivature's privilege are not addressed at that hearing.

[2] Undersigned counsel has conferred with counsel for the defendants in this case as well as counsel for Dr. Carter (defendant in Case No. 4:23-cr-225), all of whom are unopposed to the request to continue the July 25, 2026 hearing regarding the Government's Request for Hearing Concerning the Release of Communications to July 26, 2026.

Accordingly, for the reasons set forth below, Vivature respectfully requests leave to intervene in this matter and to continue the hearing regarding the Government's Request for Hearing Concerning the Release of Communications set for July 25, 2024, until July 26, 2024 or as soon thereafter as the Court and other parties are available.

## I.    Factual Background

As part of its investigation into Defendant Mouzon Bass, III, the Government executed a search warrant on January 22, 2024, on Vivature's office premises in Addison, Texas.  The search warrant authorized the Government to search and seize evidence of alleged fraud from Vivature's offices, including hard copy documents, computers and other electronic storage devices. As a result of the search, the Government seized an incredible amount of information, including at least six (6) large boxes of hard-copy documents and several computers and other electronic information from Vivature, including several .pst files collectively containing at least 2 million documents and emails.

During the execution of the search warrant at Vivature's offices, civil counsel for Vivature and Mr. Bass, Jose Portela, spoke with FBI Special Agent Jason Rennie.  Agent Rennie acknowledged that he knew who Mr. Portela was and was aware of the attorney-client relationship between Mr. Portela and Vivature and/or Mr. Bass.  Moreover, Agent Rennie acknowledged that the search team would make sure to separate privileged material collected in the search.

Although the Government was apparently well aware that it search of Vivature's office would likely encounter privileged information in both hard-copy and electronic format, it does not

---

Indeed, since Mr. Bass' detention hearing in Case No. 4:24-cr-163 is already set for this Court at 10:40 am on July 26, the undersigned counsel and counsel for the defendants respectfully suggest that this hearing be set for a time following the conclusion of Mr. Bass' detention hearing in Case No. 4:24-cr-163.  The Government opposes continuing the hearing to July 26, 2024, but is unopposed to continuing the hearing to "early next week."  However, several of defendants' counsel are opposed to continuing the hearing to "early next week."

appear that the Government sought "express prior authorization from the issuing Magistrate Judge for the seizure of attorney-client privileged materials," as the Fifth Circuit requires. *Harbor Healthcare Sys. v. United States*, 5 F.4th 593, 599 (5th Cir. 2021).

On June 28, 2024, the Government's designated Filter Team attorney shared a proposed search and filter review protocol (the "Protocol") that purports to govern the Filter Team's review of potentially privileged material, as well as the release of any materials reviewed by the Filter Team to the Prosecution Team and to other defendants. However, it appears that the Protocol was not drafted until June 25, 2024—more than five months after the Government seized Vivature's information. Thus, it appears from the Protocol that the Government took *no* steps to segregate potentially privileged material until months after the execution of the search warrant.

Moreover, the Protocol appears to be limited to *electronic* potentially privileged material. The Protocol makes no provision for the Filter Team to review the boxes of hard-copy documents seized from Vivature's office, and to date, the Government had provided Vivature with no information about how such documents have been handled. That the hard-copy documents have been entirely unreviewed for privilege is particularly troubling given that it appears certain of those documents have already been used by the Prosecution Team's agents and attorneys to question witnesses in this matter.

Lastly, the Protocol proposes to release Vivature's privileged electronic data to other individuals, including Dr. Carter and Dr. Scott, who are not within the scope of all of Vivature's privilege. Although their contracted roles at Vivature may allow them to view some of the seized privileged material without a violation of the attorney-client privilege and/or work product doctrine, a wholesale release of Vivature's electronic data to those individuals would only compound the violation of Vivature's rights and further disregard its privileges.

In light of these concerns, on July 15, 2024, counsel for Vivature sent letters to the Assistant United States Attorney for the Eastern District of Texas leading this case, Anand Varadarajan, as well as to the designated Filter Team attorney, Russell James.  In those letters, Vivature raised its concerns about the treatment of its privileged documents and communications and requested that the Government cease all review and use of any hard-copy documents seized from Vivature's office until a complete privilege review has been completed.[3]  Vivature also requested information regarding, among other things, (i) what authorization was sought relating to seizing privileged material prior to the execution of the search warrant, (ii) when a filter team was put in place and what privilege review, if any, has been conducted on Vivature's documents and information prior to June 2024, (iii) how Vivature's documents and information had been handled since the execution of the search warrant, and (iv) how and whether any of Vivature's hard-copy documents had been used in connection with witness interviews.  Finally, Vivature objected to the release of any potentially privileged electronic information to Dr. Carter or Dr. Scott until an individualized determination had been made that Dr. Carter or Dr. Scott are within the privilege of such document(s).

To date, the Government has refused to respond to Vivature's requests for information.[4]  Instead, on July 19, 2024, the Government sought a hearing before this Court regarding the parties' respective privilege claims. (Dkt. No. 87).  Despite being in regular contact with counsel for

---

[3] Copies of those letters are attached hereto as Exhibits 1 and 2.

[4] After filing the request for a hearing, Russell James of the Government's Filter Team briefly contacted the undersigned counsel telephonically on July 22, 2024, requesting an extension of his deadline to respond to July 26, 2024 because this filter assignment is secondary duty for him and his own caseload in the Beaumont Division prevented him from being able to respond on July 22, 2024.  In response, the undersigned counsel requested two items before agreeing to the extension: (1) confirmation of when the Filter Team began its review of the seized electronic data and (2) confirmation that the hard-copy materials seized during the January 22, 2024 search of Vivature's offices had been segregated from the Government pending a full filter review.  The Government's Filter Team has yet to respond to those requests.

Vivature, the Government did not seek Vivature's position on the hearing, provide notice of the request for hearing to Vivature, or provide Vivature notice of the hearing.

On July 24, 2024, the Court set the hearing on the Government's Request for Hearing Concerning the Release of Communications for July 25, 2024, at 2:00 p.m. before Magistrate Judge Aileen Goldman Durrett.

## II.    DISCUSSION

### A.    Vivature Must Be Permitted to Intervene to Protect Its Attorney-Client Privilege.

There is no dispute that Vivature has a legitimate right to protect its privilege.  Nor does the Government appear to dispute that the materials seized from Vivature's offices in January 2024 contain significant privileged material.  Accordingly, Vivature must be afforded the right to defend its privilege claims and protect its constitutional rights before any potentially privileged material is disclosed by the Filter Team.

"As a general proposition, persons or corporations which are adversely affected by the disclosure of privileged material have the right to intervene, assuming standing, in pending criminal proceedings to seek protective orders, and if denied, to seek immediate appellate review." *United States v. Crawford Enters., Inc.*, 735 F.2d 174, 176 (5th Cir. 1984). Although there is no explicit rule of Criminal Procedure governing intervention in criminal matters, the Fifth Circuit and other courts have recognized the right of third party's to intervene in such proceedings to defend its privilege. *See, e.g.*, *In re Grand Jury Proceedings in Matter of Fine*, 641 F.2d 199, 201 (5th Cir. 1981); *J.M. Smith Corp. v. Ciolino Pharmacy Wholesale Distributors, LLC*, No. CIV.A. 10-1483, 2013 WL 1344557, at *2 n.4 (E.D. La. Apr. 3, 2013) ("Other Fifth Circuit courts have noted that a right to intervene for the purpose of preventing disclosure of documents exists for third parties in a criminal proceeding."); *United States v. Martoma*, 962 F. Supp. 2d 602, 605-06

(S.D.N.Y. 2013) ("A third-party's reasonable assertion of privilege with respect to documents to be produced in a criminal action is sufficient grounds on which to grant the third-party's motion to intervene and to consider the merits of that party's application.").

Here, the Government seeks to resolve its obligations with respect to the release of potentially privileged material seized from Vivature's offices. (*See* Dkt. 87 at 2 ("[T]he Government motions the court for a hearing, to hear the parties concerns and provide guidance on how the Government should proceed and manage the data sets.").  It would be unjust to decide on how such material should be handled and to whom it should be released without affording Vivature an opportunity to voice to the Court the concerns that prompted the Government's request for a hearing.

Moreover, Vivature has a reasonable concern that the Filter Team may inadvertently or incorrectly deem material not privileged.  "It is reasonable to presume that the government's taint team might have a more restrictive view of privilege than [a privilege holder's] attorneys." *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006); *see also In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 177 (4th Cir. 2019) ("There is the possibility that a filter team – even if composed entirely of trained lawyers – will make errors in privilege determinations and in transmitting seized materials to na investigation or prosecution team.").  Given the concerns identified by Vivature regarding the treatment of its privileged material, it must be afforded the chance to participate in any discussion regarding those materials.

**B.**     **The July 25, 2024 Hearing Should Be Continued For At Least One Day.**

Vivature respectfully requests that the Court adjourn the hearing currently scheduled for July 25, 2024 for at least one day—to July 26, 2024 or as soon thereafter as convenient for the Court.

6

Counsel for Vivature has to attend a pre-scheduled medical appointment at the time of the currently scheduled hearing and is unable to attend the hearing at the scheduled time.  Moreover, Vivature was only informed of the hearing on July 24, 2024. Given that the issues to be discussed directly concern Vivature and its privilege, it would be more efficient for the Court and all parties to be able to hold a single hearing to address all parties concerns when issuing its ruling.

Vivature can be available on Friday, July 26, 2024, or at the Court's convenience the following week.  As noted above in note 2, the undersigned counsel for Vivature has conferred with counsel for the defendants and counsel for Dr. Carter, all of whom are available on Friday, July 26, 2024 for this hearing, though the Government opposes a one-day continuance.

### III.    CONCLUSION

For the foregoing reasons, the Court should grant Vivature leave to intervene in this matter to protect its constitutional rights and privileges. Vivature also respectfully requests that the Court continue the hearing regarding the Government's Request for Hearing Concerning the Release of Communications currently scheduled for July 25, 2024 at 2:00 p.m. CT until July 26, 2024 or as soon thereafter as is convenient for the Court.

Dated: July 25, 2024

Respectfully submitted,

*/s/ Ryan J. Meyer*
Ryan J. Meyer (Texas Bar No. 24088053)
KATTEN MUCHIN ROSENMAN, LLP
2121 North Pearl Street, Suite 1100
Dallas, Texas 75201
Tel: (214) 765-3600
Fax: (214) 765-3602
Ryan.meyer@katten.com

*Counsel for Vivature, Inc.*

## CERTIFICATE OF CONFERENCE

On July 24 and 25, 2024, I conferred with counsel of record in the above-captioned case, and received responses from counsel for the defendants that they are unopposed to Vivature's limited intervention for the sole purpose of defending its rights and privileges and the one-day continuance of the hearing regarding the Government's Request for Hearing Concerning the Release of Communications.

I also conferred with the Government, which did not object to Vivature's intervention in this matter for the sole purpose of defending its rights and privileges. The Government did, however, indicate its opposition to continuing the hearing regarding the Government's Request for Hearing Concerning the Release of Communications to July 26, 2024, but "are open to having the hearing early next week though" because they "need someone with knowledge of the filter process, and someone who could be in the room should substantive privilege issues be raised (which they might be), to be at the hearing. We had secured that for today and so are opposed to continuing it to tomorrow." As a result of the Government's opposition to a continuance of the hearing regarding the Government's Request for Hearing Concerning the Release of Communications, I attempted to further confer with counsel for the defendants prior to the filing of this Motion regarding a continuance of the hearing to "early next week." Counsel for Bass has indicated that they are unopposed to continuing the hearing regarding the Government's Request for Hearing Concerning the Release of Communication, but counsel for Dr. Scott has indicated he is opposed. I have not received a response from counsel for Wilson as of the time of filing, so I assume he is opposed to continuing the hearing to "early next week."

*/s/ Ryan J. Meyer*
Ryan J. Meyer

*Counsel for Vivature, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing document to be filed on July 25, 2024, with the Clerk of the Court for the United States District Court for the Eastern District of Texas and have emailed a courtesy copy of the same to all attorneys appearing in this matter.

/s/ Ryan J. Meyer
Ryan J. Meyer

*Counsel for Vivature, Inc.*

# Exhibit 1

**Katten**

KattenMuchinRosenman LLP

2121 N. Pearl Street
Suite 1100
Dallas, TX 75201
214.765.3600 tel
www.katten.com

RYAN J. MEYER
Ryan.meyer@katten.com
214.765.3627 direct
214.765.3602 fax

July 15, 2024

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**Via *E-mail* (russell.james@usdoj.gov)**

Russell James
Assistant United States Attorney
United States Attorney's Office for the Eastern District of Texas
550 Fannin, Suite 1250
Beaumont, Texas 77701

Re:    Filter Process and "Search and Filter Protocol" for *U.S. v. Carter,* Case No. 4:23-cr-225 & *U.S. v. Bass, et al*, Case No. 4:24-cr-7

Dear Mr. James:

Thank you for your transmission of the Search and Filter Protocol (the "Protocol")[1] to be utilized by the U.S. Attorney's Office for the Eastern District of Texas in *U.S. v. Carter*, Case No. 4:23-cr-225, and *U.S. v. Bass, et al*, Case No. 4:24-cr-7 (the "EDTX Cases"). In particular, I understand from your transmittal email that this Protocol is to be used by you as the Filter Team Assistant United States Attorney ("Filter AUSA") to analyze the electronic data gathered in the EDTX Cases, including all electronic data gathered from the January 22, 2024 search of Vivature's offices in Addison, Texas.

Unfortunately, this Protocol heightens my concerns for the treatment of Vivature's privileged electronic information rather than lowering it. As you know, the Fifth Circuit requires the U.S Attorney's Office for the Eastern District of Texas ("EDTX USAO") to have "express prior authorization from the issuing Magistrate Judge for the seizure of attorney-client privileged materials." *Harbor Healthcare System v. United States*, 5 F.4th 593, 599 (5th Cir. 2021) (per curiam). Should the EDTX USAO have failed to seek such an "express prior authorization," the Fifth Circuit has found that failure sufficient to evince a "'callous disregard'" for the constitutional rights of the searched party, necessitating the return of all seized privileged information and the destruction of the same by the EDTX USAO. See *id* at 600. Here, the EDTX USAO was well aware that its search of Vivature's offices would likely encounter privileged information in both hard-copy and electronic format since the Federal Bureau of Investigation agents talked to Vivature's civil counsel *during the execution of the search* and informed that counsel that *they*

---

[1] A copy of the Protocol is attached hereto as Exhibit 1.



Russell James
July 15, 2024
Page 2

*knew who he was and would make sure to separate his material*. Yet, it appears based on the Protocol, that the EDTX USAO in fact took *no* steps to segregate potentially privileged material until months *after* the execution of the search. Even then, it appears from the Protocol that the EDTX USAO has only now segregated *electronic* potentially privileged information and has made *no* effort to conduct a privilege review of the voluminous hard-copy records seized from Vivature's offices, which *have already been used to question witnesses*.

Each of these failures independently call into question whether the EDTX USAO complied with the Fifth Circuit's requirements for a search warrant application *and* the handling of seized materials. Accordingly, I would appreciate you providing answers to the following questions no later than Monday, July 22, 2024 so that I can advise my client on its rights moving forward:

1. When you were designated the Filter AUSA for the Vivature search?

2. Who was the Filter AUSA before you?

    a. If there was none, why not?

3. This Protocol is dated June 25, 2024 (and was provided to Counsel on June 28, 2024). However, the search of Vivature's premises was on January 22, 2024, over five (5) months *before* the Protocol was drafted. When was a protocol drafted for the handling of Vivature and/or Dr. Carter, Dr. Scott, Lance Wilson, and/or Mouzon Bass III's potentially privileged material?

4. Prior to the drafting of the Protocol in June 2024, how was the EDTX USAO conducting its review of Vivature's electronic data?

5. Prior to the drafting of the Protocol in June 2024, who was in possession of Vivature's electronic data—the Filter Team or the Prosecution Team?

6. When did the Filter Team take possession of Vivature's electronic data?

7. When was Vivature's electronic data imaged and indexed for upload to an eDiscovery platform?

8. When did the Filter Team begin its review of Vivature's electronic data?

9. When does the Filter Team estimate that it will complete its review of Vivature's electronic data?

10. What review of Vivature's data was conducted prior to June 2024?



Russell James
July 15, 2024
Page 3

    a.  Who conducted that review?

11.  Attachment A to the Protocol notes that the electronic material at issue in the EDTX cases was seized between January 22-24, 2024, but it was not turned over to the North Texas Regional Computer Forensic Laboratory ("RCFL") until February 5, 2024. Who was in possession of Vivature's electronic data in the intervening two (2) weeks?

12.  What review of Vivature's electronic data was conducted over those two (2) weeks?

    a.  Who conducted that review?

Finally, the Protocol as drafted compounds the injury that the EDTX USAO has already done to Vivature's privilege by proposing to release Vivature's privileged electronic data to Drs. Carter and Scott, *who are otherwise not within the scope of all of Vivature's privileged data.* While Drs. Carter and Scott's roles at Vivature may allow them to view some of the seized information without the EDTX USAO violating Vivature's attorney-client privilege and/or the attorney work-product doctrine, *again*, that should be a particularized determination document-by-document (or at least by categories). It should *not* be a wholesale release of Vivature's privileged information, which only further serves to injure the rights the Fifth Circuit attempted to protect in *Harbor Healthcare*. Accordingly, this letter also serves as an objection to the release of any of Vivature's potentially privileged electronic information to counsel for Dr. Carter or Dr. Scott until such time as the Filter Team makes an individualized determination that Dr. Carter or Dr. Scott are within the privilege for such communications.

Please do not hesitate to contact me at 214-765-3627 if you have any questions about this letter.

Sincerely,

*/s/ Ryan J. Meyer*
Ryan J. Meyer



Russell James
July 15, 2024
Page 4


CC:

Tom Gibson (andrea.henckel@usdoj.gov)

Gene Besen (gbesen@bradley.com)

Jeff Ansley (jansley@vedderprice.com)

Scott Thomas (scthomas@winston.com)

Arnold Spencer (arnoldspencer75225@gmail.com)

Exhibit 2

**Katten**

KattenMuchinRosenman LLP

2121 N. Pearl Street
Suite 1100
Dallas, TX 75201
214.765.3600 tel
www.kattenlaw.com

RYAN J. MEYER
Ryan.meyer@kattenlaw.com
214.765.3627 direct
214.765.3602 fax

July 15, 2024

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**Via *E-mail* (anand.varadarajan@usdoj.gov)**

Anand Varadarajan
Assistant United States Attorney
United States Attorney's Office for the Eastern District of Texas
101 East Park Boulevard, Suite 500
Plano, TX 75074

Re:  Filter Process and "Search and Filter Protocol" for *U.S. v. Carter,* Case No. 4:23-cr-225 & *U.S. v. Bass, et al*, Case No. 4:24-cr-7

Dear Mr. Varadarajan:

The Search and Filter Protocol (the "Protocol")[1] to be utilized by the U.S. Attorney's Office for the Eastern District of Texas (the "EDTX USAO") in *U.S. v. Carter*, Case No. 4:23-cr-225, and *U.S. v. Bass, et al*, Case No. 4:24-cr-7 (the "EDTX Cases") has raised several concerns for Vivature regarding the EDTX USAO's treatment of its privileged documents and communications in the EDTX Cases that were seized as a result of the search warrant executed on its premises in Addison, Texas on January 22, 2024.

As you know, the Fifth Circuit requires the U.S Attorney's Office for the Eastern District of Texas ("EDTX USAO") to have "express prior authorization from the issuing Magistrate Judge for the seizure of attorney-client privileged materials." *Harbor Healthcare System v. United States*, 5 F.4th 593, 599 (5th Cir. 2021) (per curiam). Should the EDTX USAO have failed to seek such an "express prior authorization," the Fifth Circuit has found that failure sufficient to evince a "'callous disregard'" for the constitutional rights of the searched party, necessitating the return of all seized privileged information and the destruction of the same by the EDTX USAO. See *id* at 600. Here, the EDTX USAO was apparently well aware that its search of Vivature's offices would likely encounter privileged information in both hard-copy and electronic format since the Federal Bureau of Investigation agents conducting the search talked to Vivature's civil counsel *during the execution of the search* and informed that counsel that *they knew who he was and would make sure to separate his material.* Yet, it appears based on the Protocol, that the EDTX USAO in fact took

---

[1] A copy of the Protocol is attached hereto as Exhibit 1.



Anand Varadarajan
July 15, 2024
Page 2

*no* steps to segregate potentially privileged material until months *after* the execution of the search. Even then, it appears from the Protocol that the EDTX USAO has only now segregated *electronic* potentially privileged information and has made *no* effort to conduct a privilege review of the voluminous hard-copy records seized from Vivature's offices.

As would be expected for a company of Vivature's size, age, and sophistication, those hard-copy documents necessarily would have included privileged materials protected by the attorney-client privilege and/or attorney work product doctrine. This category of documents, which appears to have been *entirely unreviewed for privilege* is even more concerning since those hard-copy documents *have already been used by the Prosecution Team's agents and attorneys to question witnesses*.

Indeed, recent reviews of the hard-copy materials seized from Vivature's premises, necessarily incomplete because of the volume of materials seized and the EDTX USAO's unwillingness to scan that seized material, have made clear that the EDTX USAO (*including the Prosecution Team's agents and attorneys*) *have documents and communications subject to Vivature's attorney-client and/or attorney work product privilege in their possession at this time*.

Accordingly, we respectfully request that the EDTX USAO immediately cease (1) all review of the hard-copy documents seized from Vivature's premises until a complete privilege review of the seized material is completed by a Filter Team acting in accordance with *Harbor Healthcare* and (2) all use of the of the hard-copy documents seized from Vivature's premises until a complete privilege review of the seized material is completed by a Filter Team acting in accordance with *Harbor Healthcare*.

Each of these failures independently call into question whether the EDTX USAO complied with the Fifth Circuit's requirements for a search warrant application *and* the handling of seized materials. I look forward to your answers to the questions below no later than Monday, July 22, 2024 so that I can advise my client on its rights moving forward:

1. What "express authorization" was sought from the issuing Magistrate Judge for the Vivature premises search warrant?

2. Was the Magistrate Judge informed that the search team would likely encounter privileged information?

   a. If not, why not?

3. What privilege protocols were provided to the Magistrate Judge at the time of the application for the search warrant?

**Katten**
KattenMuchinRosenman LLP

Anand Varadarajan
July 15, 2024
Page 3

4.   When was a Filter Team instituted for the EDTX Cases?

5.   What privilege review of the hard-copy documents seized from Vivature's premises was conducted by the EDTX USAO?

   a.   Who conducted that review?

   b.   When was that review conducted?

   c.   Where was that review conducted?

   d.   What search terms were utilized for that review?

   e.   Please provide a copy of all protocols utilized for that review.

6.   What review of the hard-copy documents seized from Vivature's premises was conducted by the EDTX USAO, Federal Bureau of Investigation, and/or other federal agencies?

   a.   Who conducted that review?

   b.   When was that review conducted?

   c.   Where was that review conducted?

   d.   How was that review conducted?

   e.   How that review ceased or is it still ongoing?

   f.   Who has access to the hard-copy documents seized from Vivature's premises?

      i.   Which agencies are those individuals associated with?

      ii.   How many times have those individuals accessed the hard-copy documents seized from Vivature's premises?

         1.   On what dates?

         2.   For how long?

      iii.   What documents did they review?



Anand Varadarajan
July 15, 2024
Page 4

7.  Which individuals and entities have been interviewed in either of the EDTX cases utilizing the hard-copy documents seized from Vivature's premises as exhibits?

    a.  Which hard-copy documents seized from Vivature's premises have been used as exhibits with those individuals and/or entities?

    b.  Who from the Federal Bureau of Investigation participated in those interviews?

    c.  Who from the EDTX USAO participated in those interviews?

    d.  Who from other federal agencies and/or supporting state agencies participated in those interviews?

8.  Beyond interviewing individuals and entities, what other uses have the hard-copy documents seized from Vivature's premises been put to?

9.  Attachment A to the Protocol notes that the electronic material at issue in the EDTX cases was seized between January 22-24, 2024, but it was not turned over to the North Texas Regional Computer Forensic Laboratory ("RCFL") until February 5, 2024.  Who was in possession of Vivature's electronic data in the intervening two (2) weeks?

    a.  What review of Vivature's electronic data was conducted over those two (2) weeks?

    b.  Who conducted that review?

10. Prior to the drafting of the Protocol in June 2024, how was the EDTX USAO conducting its review of Vivature's electronic data?

11. Prior to the drafting of the Protocol in June 2024, who was in possession of Vivature's electronic data—the Filter Team or the Prosecution Team?

12. When did the Filter Team take possession of Vivature's electronic data?

13. When was that data imaged and indexed for upload to an eDiscovery platform?

14. What review of Vivature's electronic data was conducted prior to June 2024?



Anand Varadarajan
July 15, 2024
Page 5


Finally, the Protocol as drafted compounds the injury that the EDTX USAO has already done to Vivature's privilege by proposing to release Vivature's privileged electronic data to Drs. Carter and Scott, *who are otherwise not within the scope of all of Vivature's privileged data*. While Drs. Carter and Scott's roles at Vivature may allow them to view some of the seized information without the EDTX USAO violating Vivature's attorney-client privilege and/or the attorney work-product doctrine, *again*, that should be a particularized determination document-by-document (or at least by categories). It should *not* be a wholesale release of Vivature's privileged information, which only further serves to injure the rights the Fifth Circuit attempted to protect in *Harbor Healthcare*. Accordingly, this letter also serves as an objection to the release of any of Vivature's potentially privileged electronic information to counsel for Dr. Carter or Dr. Scott until such time as the Filter Team makes an individualized determination that Dr. Carter or Dr. Scott are within the privilege for such communications.

Please do not hesitate to contact me at 214-765-3627 if you have any questions about this letter.

Sincerely,

*/s/ Ryan J. Meyer*
Ryan J. Meyer


CC:

Gene Besen (gbesen@bradley.com)

Jeff Ansley (jansley@vedderprice.com)

Scott Thomas (scthomas@winston.com)

Arnold Spencer (arnoldspencer75225@gmail.com)